05-3305, Mr. Dumar. May it please the dishonorable court, I'm George Dumar for the petition of Jerry Gunn and it's our position, your honors, that the findings of the Administrative Law Judge and the Merit Citizens Protection Board should be reversed because the Administrative Judge in fact had jurisdiction over Ms. Gunn's claims because she made non-frivolous whistleblowing allegations. I think what the Administrative Judge did in the context of these whistleblowing cases, your honor, under 5 U.S.C. 2302 B-8, Congress in 1989 gave whistleblowers some enhanced protections compared to what they already had and said if they make whistleblowing allegations they're entitled to a hearing. And the court, the Federal Circuit... But you have to make a protected disclosure. That's correct, your honor. Under B-8 you have to make a protected disclosure, which is a disclosure of some alleged violation of law, rule, regulation, or an allegation of a specific or substantial safety violation among other things, your honor. So there are several categories and once you make a disclosure in those categories, your honor, you are entitled to a hearing. What's the category here? The category here. There would be two particular categories applicable, your honor, a significant safety violation or a violation of law, rule, or regulation. I think both of those are covered. And the board said this wasn't a government building and so there was no impact on the government. Is that correct? Well, it wasn't. It was not owned by the government, your honor, but there is evidence in the record, and I think that the fact is it was leased by the government, it was leased by the Department of Labor. My client who worked for the Mine Safety and Health Administration was in the building. And in RA, I guess in pages 23 and 24 of the appendix, it covers her complaint, complaining about smoking in stairwells around combustible materials in the building, not by government employees, it was by contractors. So it wasn't by the government, your honor, we're not maintaining that the government employees did it, but we are maintaining that it was a government leased building and there's evidence in the record. I'm sorry. Go ahead. It wasn't clear to me, straighten me out on this. Was the space in which the stairways in which the smoking was occurring, was that space at that time leased to the government, or was that space which was anticipated to, was under renovation such that it would be leased to the government at a later time? The fact of the matter, it was leased to the government at that time. Now, what has happened is that my client alleged and stated that it was contracted for lease to the government. The Office of Special Counsel assumed it was entrance space. My client didn't have the lease at the time, your honor, and recently through a FOIA request, obtained the lease that confirms her allegations that it was government leased space. At the time, she had made the initial complaint on May 12th. Well, we don't have that. I mean, what's in the record on that question? Well, the record is her statements that it is, on page RA23, that it is space that was contracted for lease to the government, and that there were solicitor's office employees on the 22nd floor and other employees on a related floor. Not in the hallways, not in the elevators, but on in the floor and some of the space there were already Department of Labor and MSHA employees working at that time. They weren't. She was there looking at space that she was about to move into, which my client did move into a couple of weeks later. Now, I mean, because she did not have access to the lease itself at the time when the record was out and below. But there are, she has made those allegations, and there is evidence in the file, and the record states to be MSHA space in its determination, Your Honor. So I think that corroborates her claim that it's MSHA space. But I think that goes to the heart of the issue here, Your Honor, which is the employee, the alleged whistleblower, Congress provided that they are entitled to a hearing once they make non-frivolous allegations. And I think if you look at pages 23, 24, and 25 of the appendix, Your Honor, that discusses the use of MSHA, the fact that MSHA was using that space at that time, Your Honor. But she doesn't have to. What was the, it may depend on the status of the space, but what is the violation of the rule or regulation, et cetera, et cetera? What is the violation that she reported? Well, she reported to the fire department, Arlington County Fire Department. I understand that. But what was violated that's a pertinent rule or regulation that she reported? Well, she reported, she reported generically violations of the Arlington County Fire Code, Your Honor. Okay, but if she had gone next door to a rickety building that was a fire trap, and had reported to the Arlington Fire Department that this is a fire trap, and what's more, this fire trap is likely to go catch on fire and injure the people in the government building, including me, she says, that wouldn't be a predicate disclosure, would it? That wouldn't be, Your Honor, because that wouldn't be because... Because she wouldn't be reporting a violation of any federal rule or regulation, et cetera. Well, I think there are two things. One, the statute doesn't say, I recall, it doesn't say federal rule or regulation. She didn't report that. Okay, but what... In fact, I mean, smoking was, and we pointed out in a reply brief, there is an executive order that prohibits smoking in all government buildings, including buildings leased by the government. And that's a very... It brings us back to the question of whether this place was leased or not, I suppose. Well, I mean, I think that, and that, I mean, the issue was she's alleged that it was leased. And in fact, Your Honor, I do have the lease documents today, I just did not have them at the time below. And I'm happy to supplement the record with those if the court would like, and I would represent to the court that they would support her claims in that regard and the evidence in the record. So I think the fact is, she's alleged that it was government leased space. In fact, the documents she obtained in the FOIA disclosure show that it was government leased space. She didn't get those to me until after the reply brief was due, Your Honor, but she did get them at some point late last, or at some point last year. There was no issue here that she would have been removed anyway for unprofessional conduct to the architect. Well... Or was there? Well, she's... Certainly, the government's claimed that below. They've made the argument below. But that wasn't the basis of the decision below. No, it was not, Your Honor. That's correct. That was simply government control and government, or lack of government involvement. That's correct, Your Honor. I mean, they've obviously made these... This argument, but I don't think that's the basis for the decision below. I don't really think that's relevant for a jurisdictional analysis here. I think the way I read these cases, and I practice mostly in the regular federal court, is that the government whistleblowers are entitled to a hearing. And that what happens is that over time, in the Spruill case, the court ruled that essentially here, that if they make a well-pleaded complaint kind of allegation, analogous to what we use in the district courts, then they're entitled to move forward. The administrative judges developed a procedure where they would have jurisdictional hearings to weed out what they considered the non-frivolous cases. Then the federal circuit, in the Yunus case, ruled that, look, this Dr. Yunus, he's made some strange allegations about this subordinate, but they were clearly satisfying the jurisdictional requirement. And even though the judge ruled on the merits, you don't really need to have the jurisdictional hearings separate. Since then, the jurisdictional merits hearings by administrative judges have been merged into one, essentially. There are no separate jurisdictional hearings anymore. So I think what's happening is some of the judges, like the judge here, instead of, because they want to weed out more claims, but instead of having the merits hearing and the jurisdictional hearing together, as set forth in Yunus, they've decided to sort of make some factual findings below. They, like the judge here, said, hey, the record shows it's not a federal building. Well, I don't see that in the record anywhere, Your Honor, but the judge. Would it make any difference if the violation that was reported was not cited, or no violations that were found? Well, I think that that doesn't make a difference for jurisdictional purposes, Your Honor. I think there's some. Well, what about the fact that no violations were found by the fire department? Well, I don't think the record shows that. There was no, the petitioner concedes that the fire department didn't make any citations. The fire department did go, and from the petitioner's perspective, did. They investigated. They investigated, yes, Your Honor. And they issued no citations. And they issued no citations. That does not mean. So there was no violation. Well, it does not mean there was no violation, Your Honor. No citable violation. Well, I think what happened is the situation was resolved below. That's, I think, what the record says, without a citation. And, you know, there's no, the petitioner's view is that, and I think there is evidence that we've found that confirms this, again, recently, that there were potential violations found by the fire marshal, but he decided to resolve those informally without the issuance of a citation. For this purpose, Your Honor, I think that whether the fire department, fire marshal found a citation or not shouldn't affect the jurisdictional analysis. We're here on the question of whether my client, Ms. Gunn, made non-frivolous allegations. And, again, Your Honor is getting to an issue that is a merits issue on the case. No. I understand that. But we're looking also from the jurisdictional aspect to determine whether or not it was an allegation that wouldn't establish jurisdiction. Right. I understand that. Can we look also at the fact whether or not the alleged violation was not cited to establish jurisdiction? Because if the violation was cited, then obviously it would be a corroborative evidence of supporting the jurisdictional analysis. That's true, Your Honor. Can we look at it also because there was no citation cited? Well, I think, Your Honor, from this perspective, I respectfully disagree because I think that is a merits decision. If we had to actually prove the violation every time or show that there was a violation every time you're making a whistleblowing allegation, it would require a merits hearing just to show that and determine whether you have jurisdiction in the first place so that you would, in effect, have to have the merits hearing to show whether there was a violation or not. I understand, Your Honor's point, that certainly the courts look at evidence in the record and if there was a violation cited, certainly I'd be citing it here by the fire department and what there was not. But I don't think that precludes Ms. Gunn from being allowed to have a hearing and having the right to a hearing here because I think the test is whether she simply made non-frivolous allegations, not whether there was a violation or she prevailed on the merits. Now, I see I'm cutting into my rebuttal time, so I'll reserve the remaining couple of minutes for that, Your Honor. That'll be fine. Thank you. Ms. Stenderford. Can I please support? This court should affirm the Merit System Protection Board hearing because it was correctly decided. There's one important fact that precludes a finding that Ms. Gunn made non-frivolous allegations under the whistleblower protection action, and that is that the persons whose behavior she was complaining about were not government employees. So she could not have had a reasonable belief that she was making a disclosure of wrongdoing by the government. But wasn't the government as lessee responsible for the premises? And therefore, whether they owned it or were a lessee or was contractors, if a public health issue arises from smoking in a smoke-free building, why does it matter that the government was only a lessee? Because the Whistleblower Protection Act focuses on the behavior of government employees. It's directed— But the government employees, aren't they responsible as lessees for the welfare and well-being of the building? In a general sense, Your Honor, yes, I guess they are. I mean, as licensees, as people—as operating a building where the public can possibly come and go, yes, they have some sort of tort liability. But that's different from liability and their responsibilities under the Whistleblower Protection Action. I think that they're two separate things. And whether the space was actually leased by the government, that there may or may not be some dispute about that. There's no dispute, based on what's in the record, that this particular space, the 21st floor, was not occupied by the government at the time. The space had not yet been turned over to the government, which is reflected in the email from Mr. Goodenough, which is, I think, on page 40 of the appendix. When he described, he talked about the fact that the fire department had been there, and he wondered why. And he said, they're on the 21st floor, they're Westfield Realty's contract employees renovating the space. The space has not yet been turned over to them. How did this happen? This was not space that was controlled at the time, whether it was leased to them or not. It was not occupied, nor was it controlled by the government. But I think that's really, that's not the point here. That's a red herring. The point is that the Whistleblower Protection… I would think that is the point, from your standpoint. If it wasn't controlled by the government, then they had no power to deal with a danger to public health or safety. Well, that's true. But the more important point here, Your Honor, even if it were under their control, even if it were leased to them, we're not talking about behavior of government employees. Well, I wonder, perhaps it's a stretch to use a somewhat different hypothetical. If, for example, she had reported that this is a government building, let's say, and she reported that there were drug dealers congregating in the parking area of the building on a regular basis, and she noticed that they were armed and it looked like a dangerous situation, she reported that and was told that just ignore it, forget it, this isn't your concern. Wouldn't that be a disclosure, in effect, of lack of supervision by the government employees who are responsible for maintaining a safe premises? And therefore, the fact that the people, the drug dealers themselves, were not government employees wouldn't make a difference for purposes of the whistleblowing aspect of the case, the disclosure question. Well, in that case, the protected disclosure would not be what the drug dealers were doing when they're not doing the protected disclosure, they would be of the government employees failing to act. Well, that's implicitly what we've got here is a problem. She's saying this is a problem that needs to be addressed by the government because this is a government space, either now or in the immediate future, and therefore it's a danger. Isn't that the gist of the disclosure? Well, what she disclosed were, it's not clear from the record how many contract employees were smoking in the stairwells or in the space that's being renovated, but the fact is that this behavior, these incidents were investigated by the county authorities, that's to whom she reported them, and there wasn't a violation found, and that's again reflected on page 40 of the record in Mr. Goodenough's email. But again, that's not... But wasn't she instructed to bring such complaints through channels, not to take them to the fire department? And it would be irresponsible of her employer not to have channels through which to... Right, but why? I mean, if she was complaining, for example, that her next door neighbor at home was smoking and making a dangerous fire hazard in his house, they wouldn't ask that that be reported through channels, right? And the reason it was going through channels is because it's a matter of potential government concern, right? No, I think that in this case, the reason, the channels that this particular disclosure was going through, the reason the government... It isn't that the government didn't think she should report it, the government heard what she said, and the response was, well, those aren't our employees, they're not answerable to us, we don't control them. They're answerable to Westfield Realty or whoever the subcontractor was who actually employed them. That's who those employees are answerable to. Right. Not the government. They're not under our control. Right. And there's no reason for us to do anything. They're aware of it. Westfield Realty's aware of this problem. They've taken an interest in it. And the fire department's been here, thanks to you, and discovered and found that there's no violation, there's no problem. Okay, but one ingredient of that exchange, if I recall the record, is that they said, henceforth, report these through channels, right? Right, but that's not an indication that there's some cover-up, there's not an indication that there's... No, that's not... The question is, is that an indication that this is a matter of government concern? That is to say, is this a matter which is different from reporting that your next-door neighbor at home is smoking? No, I don't think it is. I think it's, legally speaking, under the Whistleblower Protection Act, which is an issue here, Your Honor. It's exactly the same as reporting that the person in the car next to her is smoking, that someone is smoking in the parking garage across town. They're not government employees, they're not people under the control of the government, and there's no government misbehavior of the kind that the Whistleblower Protection Act was designed to address. There's no protected disclosure, there's no... Another point is, Your Honor, that she's reporting this not to her employer, and the Whistleblower Protection Act was designed to make people feel as if they could come forward with information about their employer without fear of losing their job. She's reporting this, essentially, to GSA. She's not reporting it to the Mine Safety and Health Association. That's another problem. It's another reason that what she's saying is not protected, and she couldn't really have reasonably believed that it was. Both of those things need to be true. She needs to be reporting government misbehavior that violates a specific statute, or somehow is wrongdoing. I guess the other problem here, Your Honor, the kind of misbehavior that she's talking about here does not implicate the mission or the programs of her employer. The fact that some subcontractor's employees make a bad personal health decision to smoke on the job, and don't take the time to take the elevator down 21 flights to smoke outside, does not implicate the Mine Safety Association's mission. It's not going to reflect on them. It doesn't affect the... But if the building burnt down, it would, wouldn't it? This was the 21st floor of a building. Right. Mine Safety was maybe on the other floors. And what if the building burnt down? Wouldn't it impact the agency? Well, it would affect the agency, but it doesn't... They're not in the business of preventing fires. They're in the business of regulating mine conditions. Does it have to be a direct impact on their mission? Yes, I think it does. And I think that's the Arouse v. Department of Justice case. That's what it said. It has to implicate the programs. There has to be some indication that the government's encouraging this or benefiting from it, or that it's affecting the integrity or the reliability of a government program. And that's simply not true here. That's just not the case here. So... If the impact was present, then it would be indirect. Yes. And on a basis not protected by the whistleblower protections. By WPA. And... For those reasons, Your Honor, this court should affirm the decision of the American System of Protection Court. Thank you. All right. Mr. Duhemeyer has a little time. Thank you, Your Honor. Just briefly, on the... I mean, I think the Arouse case was decided... I mean, doesn't... The interests of the government don't have to be directly affected. Obviously, I think if the building burned down and the agency responsible for mine safety was in the building, it would affect adversely the interest and reputation of the government. And the Arouse case says that... The test is whether the government's interest and reputation could be implicated or were implicated in the alleged wrongdoing. It doesn't necessarily mean the reputation relating to the specific area of management of the government. To use Your Honor's drug dealer example, drug dealers doing business in the hallway would never be part of the government's mission, but they would potentially be a valid whistleblowing complaint if an employee were to report that, if it was going on, because it would affect and could affect adversely the government's interest and reputation. But what would be being reported? Wouldn't, in a case like that, it have to be reporting lack of supervision over the building by supervisors? No, Your Honor. Like in the Arouse case, the whistleblower was reporting improper action by the contract. It didn't have anything to do with the government's supervision or control of that program. In the Johnson case, there was another case where there was a third party acting as a government contractor. The government didn't control everything they were doing on a ministerial basis, but there was a contract through which the third party was acting. And they were, in the Arouse case, doing things improper under immigration law. So the fact that they were acting not... The government wasn't directly facilitating what they were doing, but they were doing it pursuant to a government contract, and the government could be sort of identified with what they were doing out there in the field as a government contractor. I'm not even sure that people were aware this third party was a government contractor, but in fact they were. Here, I think everybody's aware, it's public knowledge, that this high-rise building in Rossum is leased in large part by the government. And Westfield Realty, the third party contractors, were basically the landlord management company whose employees were and continue to smoke in the building in May 2002. I think the government did control the space, and the lease documents weren't in the record, but the government really hasn't contested that the lease documents at least had that floor under lease as of May 12, 2002. Let me see if I understand how broad your submission is here, because what I understood you just to be saying was that as long as you're a government contractor and somebody reports misconduct by the contractor, that that constitutes a disclosure for purpose of whistleblower. Well... Isn't that... Is that your submission? Not completely, Your Honor. I think the government's interest and reputation have to be affected. Well, I thought you were arguing that the government's identified with its contractors to an extent sufficient to, in effect, render the contractors agents for the government for purposes of a disclosure, in which case you wouldn't need to have space that was rented by the government. You could have a contractor in Nevada in its own building having activities that would be unlawful, and then the person would say, there's my disclosure. No, I don't think that's sufficient, Your Honor. I'm not arguing that. Well, what's the line that you're arguing for? The line is, in the Araos case, the government's interest or reputation would have to be adversely affected if the action were to continue, so that if the alleged wrongdoing were allowed to continue, this is from the Araos case, the agency could be viewed as an accessory to the wrongdoing. And the fact that it's a government contractor is not enough to trigger accessorial... Not by itself. Here, it's the government leased building, and that provides the nexus with the government that could affect the government's reputation if there was a problem. Thank you. Thank you, Mr. Dumas. The case will be taken under advisement.